UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AMANDA KNAPP-ELLIS and ROBERT SORIANO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STELLAR RECOVERY, INC., a Florida corporation,<br><br>Defendant. | No. 2:13-cv-01967-RSM<br><br>DEFENDANT'S MOTION TO STAY PROCEEDING |

## I. INTRODUCTION

Defendant Stellar Recovery, Inc. ("Stellar") moves the Court for an order staying this action pending the disposition of five administrative proceedings currently pending before the Federal Communications Commission.

**a.** **Nature of the Action**. Plaintiff Knapp-Ellis brought this putative class action against Stellar. Plaintiff has filed an amended complaint (the "FAC") to join Robert

DEFENDANT'S MOTION TO STAY PROCEEDING - 1

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104-4089
(206) 382-2600 FAX: (206) 223-3929

[2:13-cv-01967-RSM]

Soriano as an additional named plaintiff. The FAC alleges: (a) negligent violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA") and (b) knowing and/or and willful violations of the TCPA. The complaint's class allegations are set forth in the FAC. The class is defined as follows:

> All persons in the United States to whom: (a) Defendant and/or a third party acting on Defendant's behalf, made one or more non-emergency telephone calls; (b) promoting Defendant's good or services; (c) to their cellular telephone number; (d) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; (e) without the recipient's prior express consent; and (f), at any time in the period that begins four years before the date this complaint was filed to trial.

Plaintiffs allege Stellar's equipment is an "automatic telephone dialing system" ("ATDS"), as defined by the TCPA in 47 U.S.C. §227(a)(1)(A) and 47 C.F.R. 64.1200(f)(2).

**b.     The Regulatory Landscape.**  In 2003, the FCC instituted a rule making proceeding to implement the TCPA, *In re Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991,* Docket CG 02-278, 18 F.C.C.R. 14014 at 14083 (2003). Since that time, the Commission has received multiple petitions for declaratory orders and, literally, thousands of comments about the TCPA.[1]  Currently, the Commission is considering five petitions for declaratory relief and one petition for rule making. These six proceedings address questions at issue in this matter. Commission resolution of these issues will bring certainty to this proceeding.

---

[1] During the period of limitations applicable to this case alone, the Commission has received 3022 petitions and comments about the TCPA's interpretation and enforcement (Shafer Declaration, ¶2)

DEFENDANT'S MOTION TO STAY PROCEEDING - 2

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104-4089
(206) 382-2600 FAX: (206) 223-3929

[2:13-cv-01967-RSM]

In a March 25, 2014 press release Federal Communications Commission Commissioner Michael O'Rielly voiced the urgency the Commission now feels to address the legal confusion and litigation explosion that has occurred over the last several years.[2]

For the reasons explained below, under the doctrine of primary jurisdiction, this Court should stay this proceeding.

## II. FACTUAL BACKGROUND

**A. Case Status.**

1. <u>Nature of the Individual Claim</u>. Plaintiffs allege that in May 2013 Stellar called Plaintiff Knapp-Ellis on her cellular phone without consent to demand payment for a bill Stellar contends plaintiff owes to Comcast, a creditor on whose behalf Stellar was acting.[3] Plaintiff Knapp-Ellis contends that she did not provide her prior express consent to being called on her cell phone regarding her Comcast debt. Plaintiff also contends that Stellar left pre-recorded messages which failed to identify Stellar. Finally, plaintiff alleges that Stellar employs "spoofing" technology. Plaintiff Soriano alleges that Stellar began calling his cell phone in early 2014, leaving between 3 and 6 prerecorded messages which identified Stellar as the caller. Plaintiff Soriano also denies giving consent to these calls.

2. <u>Procedural Status of Case</u>. This case has been pending since October 30 2013. The parties have filed their Initial Disclosure Statements and the Joint Status Report.

---

[2] Shafer Declaration, Exhibit 1
[3] While Stellar does purchase debt from originating creditors, the evidence in this case will eventually show that in this instance, it did not own the Comcast debt. It was merely acting as a third party debt collector. It was not even an assignee of the debt for collection purposes.

DEFENDANT'S MOTION TO STAY PROCEEDING - 3

SIMBURG, KETTER, SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104-4089
(206) 382-2600 FAX: (206) 223-3929

[2:13-cv-01967-RSM]

The Court has set October 30, 2014 as the deadline for class certification. Trial is scheduled to begin September 28, 2015.

Discovery is in a very preliminary stage as the parties attempt to obtain Comcast's account documentation. Plaintiff served her first interrogatories and requests for production on February 21, 2014. Defendant has not yet responded to Plaintiff's discovery. Discovery does not close until May 27, 2015.

If the FCC grants the relief sought by the several petitioners discussed below, the legal landscape of TCPA claims will change. Depending on what the Commission ultimately decides, this claim, and claims like it, may vanish (if the Commission rules that the TCPA does not apply to debt collection activities because they do not involve the transmission of unsolicited advertisements).[4]

Because several substantive issues before the Court are also before the FCC, staying this action is appropriate under the doctrine of primary jurisdiction.

**B.  The Petitions Pending Before the FCC.**

On January 31, 2014, ACA International, a trade association of credit and collection professionals, filed a Petition for Rule Making, *Petition for Rule Making of ACA International* (the "ACA Petition").[5] The ACA Petition asks the FCC to adopt rules to clarify and make nationally uniform the rules regarding the use of automated dialing equipment by the collection industry. It seeks a rule exempting calls made by collection

---

[4] Pursuant to 47 U.S.C. 227(b)(2)(B)(ii)(II), the Commission has the delegated authority to permit commercial calls to cell phones using an ATDS so long as the call is not an unsolicited advertisement.
[5] Shafer Declaration, Exhibit 2

DEFENDANT'S MOTION TO STAY
PROCEEDING - 4

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104-4089
(206) 382-2600 FAX: (206) 223-3929

[2:13-cv-01967-RSM]

agencies under the FCC's authority contained in 47 U.S.C. §227(b)(2)(B)(i) and (ii). It also asks the Commission to adopt regulations which limits inclusion of predictive dialers falling within the scope of the definition of an ATDS to such equipment which contains a random or sequential number generator.[6] Finally, the ACA Petition asks the FCC to adopt a safe harbor rule to exempt "wrong number calls" from the TCPA's reach.

The Commission is simultaneously considering six petitions for declaratory rulings which ask the agency to decide: (i) whether the TCPA applies to non-telemarketing calling activities such as debt collection; (ii) whether equipment that lacked the *capacity* for random or sequential number generation at the time calls were placed to the call recipient constitutes an ATDS and (iii) whether a predictive dialer that does not have a random or sequential generator falls with the statutory definition of an ATDS.[7] *See, In re Communication Innovators' Pet. For Declaratory Ruling,* CG Dkt. No. 02-278 (June 7, 2012) ("CI Petition"); *In re GroupMe, Inc. Pet. for Expedited Declaratory Ruling & Clarification*, CG Dkt. No. 02-278 (Mar. 1, 2012) ("GroupMe Petition"); *In re Cargo Airline Association Petition for Expedited Declaratory Ruling* (CG 02-278) (filed August 17, 2012) ("CAA Petition"); *In re YouMail, Inc.'s Pet. for Expedited Declaratory Ruling,* CG Dkt. No. 02-278

---

[6] In 2003, the FCC concluded, without analysis that so-called predictive dialers satisfied the definition of an ATDS. See, *In re Rules & Regs. Implementing the TCPA,* 68 Fed. Reg_ 44144, 44161 (July 25, 2003). However, the 2003 Order left unresolved the question of whether a random or sequential number generator was still a part of the definition. Since 47 U.S.C. 227(a)(1)(A) requires the existence of a number generator, the ACA Petition contends that even a predictive dialer must have this feature.

[7] The Court may take judicial notice of information made "publicly available by government entities" and whose authenticity no party disputes, such as declaratory ruling petitions filed with the FCC, and subsequent filings by the FCC and other parties on the same docket. *Daniels-Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998-99 (9th Cir. 2010) (citing Fed. R. Evid. 201)).

DEFENDANT'S MOTION TO STAY
PROCEEDING - 5

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104-4089
(206) 382-2600 FAX: (206) 223-3929

[2:13-cv-01967-RSM]

(Apr. 19, 2013) ("YouMail Petition"); *In re Glide Talk, Ltd. Pet. for Expedited Declaratory Ruling,* CG Dkt 02-278 (October 28, 2013) ("Glide Talk Petition") and *In Re Petition of United Healthcare Services for Declaratory Ruling Regarding Reassigned Wireless Telephone Numbers,* CG Dkt 02-278 (January 16, 2014) ("United Healthcare Petition").[8]

*In re Communication Innovators.* On June 7, 2012, Communication Innovators ("CI") filed a Petition for Declaratory Ruling with the FCC, seeking a declaration that "the Commission clarify, consistent with the text of the TCPA and Congressional intent, that predictive dialers that (1) are not used for telemarketing purposes and (2) do not have the current ability to generate and dial random or sequential numbers, are not 'automatic telephone dialing systems' . . . under the TCPA and the Commission's TCPA rules." In requesting this ruling, the CI Petition points out that the TCPA does not define "capacity," and urges the FCC to "clarify that the definition of an autodialer under the TCPA reflects equipment that has a *present* capacity, such as having the current ability to generate and dial random or sequential numbers without additional modifications to the equipment." *Id* at 17. It argues the FCC should not interpret capacity as encompassing any conceivable hardware or software modification to a device that would permit it to generate, store, and dial numbers randomly or in sequence.

As the CI Petition notes, interpreting "capacity" broadly to include "any conceivable hardware or software modification" would potentially bring "mobile phones, smart phones, tablets, e-readers, and personal computers" within the TCPA's scope, as each can

---

[8] These five petitions are attached to the Shafer Declaration as Exhibits 3 through 8, respectively.

PROCEEDING - 6

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104-4089
(206) 382-2600 FAX: (206) 223-3929

[2:13-cv-01967-RSM]

"theoretically be modified ... to randomly or sequentially generate and dial telephone numbers."

The CI Petition asks FCC to distinguish between telemarketing and informational calls when it clarifies the meaning of "capacity." In particular, the CI Petition contends, "today's predictive dialers-many of which have no current capacity to dial random or sequential numbers-are used for a number of innovative non-telemarketing purposes that simultaneously bring benefits to consumers and businesses such as allowing businesses with a legitimate need to contact a large number of specific accountholders or other consumers to do so accurately, efficiently, and cost-effectively." *Id* at 18-19. As recently as January 3, 2014, Communication Innovators filed *Comments of Communication Innovators*[9] in support of the *Petition for Declaratory Ruling of Glide Talk, Ltd for Expedited Declaratory Ruling*, GC 02-278, filed October 28, 2013. The Commission issued its Notice of Public Comment in the *GlideTalk* proceeding on December 2, 2013.[10]

*In re GroupMe.* In its Petition for Declaratory Ruling, filed on March 1, 2012, GroupMe also requested "that the Commission issue a ruling defining 'capacity' to encompass only equipment that, *at the time of use,* could, in fact, have autodialed random or sequential numbers without human intervention and without first being technologically altered."[11] On July 24, 2012, the FCC issued a public notice seeking comment on

---

[9] Shafer Declaration, Exhibit 9
[10] Shafer Declaration, Exhibit 10
[11] Shafer Declaration, Exhibit 4 at 14.

DEFENDANT'S MOTION TO STAY PROCEEDING - 7

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104-4089
(206) 382-2600 FAX: (206) 223-3929

[2:13-cv-01967-RSM]

GroupMe's petition. *Id.*,[12] (FCC Pub. Notice, Consumer and Governmental Affairs Bureau Seeks Comment on Petition for Expedited Declaratory Ruling from GroupMe, Inc. (July 24, 2012)). The Commission granted GroupMe's petition On March 27, 2014.[13]

*In re Cargo Airline Association.* In its petition filed August 17, 2012, the Association sought a declaratory order that its sending text messages to package recipients' cell phones was exempt from the TCPA because the message was not a solicitation. The Commission granted the CAA Petition on March 27, 2014.[14]

*In re YouMail.* YouMail, Inc. filed its Petition for Declaratory Ruling on April 19, 2013. Like Communication Innovators and GroupMe, YouMail asks that "the Commission affirmatively state that only equipment that has the *current* capacity to store and produce telephone numbers to be called using a random or sequential number generator-and is currently being used for that purpose-should be considered an ATDS."[15] On June 25, 2013, the FCC issued a public notice seeking comment on YouMail's petition.[16] The deadline for comments was July 25, 2013, and for reply comments, August 9, 2013. YouMail's proposed interpretation of the term "capacity" as current capacity received "widespread support from the majority of commenters." *Id*. This petition is still pending.

*In re GlideTalk.* Glide Talk contends its messaging system does not have the capacity to generate random or sequential numbers and, therefore, should not be deemed an

---

[12] Shafer Decl. Exhibit 4
[13] Shafer Declaration, Exhibit 11
[14] Shafer Declaration, Exhibit 12
[15] Shafer Declaration, Exhibit 6 at 11
[16] Shafer Declaration, Exhibit 13

DEFENDANT'S MOTION TO STAY
PROCEEDING - 8

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104-4089
(206) 382-2600 FAX: (206) 223-3929

[2:13-cv-01967-RSM]

ATDS. GlideTalk's petition further asks the Commission to rule that only equipment that has random or sequential dialing capability at the time a call is placed should be deemed and ATDS. It too is pending.

*In re United Healthcare.* United Healthcare Systems asks the Commission to declare that when a call is placed to a cellular number that has been reassigned, the party who receives an inadvertent phone call because he/she has received a reassigned phone number cannot bring TCPA action under the TCPA. In *Matlock v. United Healthcare Systems, Inc*., 2014 WL 1155541 (ED CA March 20, 2014), the court granted a motion to stay that proceeding based on United Healthcare's pending FCC petition.

### III. ARGUMENT

**A. The Court Should Stay This Action Under the Primary Jurisdiction Doctrine Pending FCC Guidance That May Dispose of Plaintiffs' Claims.**

Under the primary jurisdiction doctrine, courts may stay proceedings or dismiss complaints without prejudice pending resolution of "an issue within the special competence of an administrative agency." *N. Cnty. Commc'ns Corp. v. Cal. Catalog & Tech.,* 594 F.3d 1149, 1162 (9th Cir. 2010) (quoting *Clark v. Time Warner Cable,* 523 F.3d 1110, 1114 (9th Cir. 2008)). Courts invoke the primary jurisdiction doctrine "to advance regulatory uniformity, to answer a question ... within the agency's discretion, and to benefit from technical or policy considerations within the agency's ... expertise." *Charvat v. EchoStar Satellite, LLC,* 630 F.3d 459, 466 (6th Cir. 2010) (invoking primary jurisdiction doctrine in TCPA case). Courts may stay a case pending an agency determination, "where there is (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of

DEFENDANT'S MOTION TO STAY
PROCEEDING - 9

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104-4089
(206) 382-2600 FAX: (206) 223-3929

[2:13-cv-01967-RSM]

an administrative body having regulatory authority (3) pursuant to the statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *Davel Commc 'ns, Inc. v. Qwest Corp.,* 460 F.3d 1075, 1086-87 (9th Cir. 2006).

This case satisfies all of these criteria. The Court should stay this action pending the FCC's likely imminent ruling on the pending petitions.[17] In fact, Judge Settle issued just such a ruling last month in *Hurrle v. Real Time Solutions, Inc.*, 3:13-cv-05765 (WD WA February 20, 2014). *Hurrle* is a national class action in which the plaintiff has alleged TCPA violations arising from certain mortgage debt collection activities by Real Time Solutions.

    1.    <u>Congress Granted the FCC Primary Jurisdiction to Resolve Whether the TCPA Applies to Non-Telemarketing Calls</u>.

Congress explicitly delegated to the FCC the power to implement and construe the TCPA. 47 U.S.C.§ 227(b)(2). Specifically, the TCPA empowers the FCC to prescribe regulations under the Act to exempt certain types of commercial calls from the requirements of the Act, *see id.* §§227(b)(2)(B)(ii)(II) and (b)(2)(C); to intervene in suits filed by state attorneys general, §227(g)(3) and to enforce the Act and its accompanying regulations. *See also Charvat,* 630 F.3d at 466-67. Congress vested the FCC with considerable authority to "implement and construe" the TCPA. *Charvat* at 466.

---

[17] As stated above, Commissioner O'Rielly has publicly voiced the urgency of resolving unsettled issues revolving around the TCPA's application. The Commission has demonstrated this sense of urgency by issuing two declaratory rulings granting petitions for exemption on March 27, 2014 in *Group Me* and *Cargo Airline Association*.

DEFENDANT'S MOTION TO STAY
PROCEEDING - 10

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104-4089
(206) 382-2600 FAX: (206) 223-3929

[2:13-cv-01967-RSM]

Consistent with that authority, the FCC has created a complex regulatory scheme governing telemarketing activity. It has done so by adopting new regulations as technologies and business practices evolve. *See, e.g., In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991,* 18 FCC Red. 14014, 132-133. See, *Fried v. Sensia Salon, Inc.,* 2013 WL 6195483, at Slip Op 5 (S.D. Tex. Nov. 27, 2013). ["The FCC has regulatory power over this [telemarketing] industry and can respond to changes in the industry through regulations, reports and orders, declaratory rulings, and other available tools."]

Given the specific role Congress conferred on the FCC under the TCPA, the FCC occupies the best position to determine whether non-telemarketing activity falls within the TCPA's sphere, what "capacity" means under the TCPA and whether a predictive dialer must have a random or sequential number generator to satisfy the statutory definition of an ATDS.[18] Resolving these questions requires the FCC to reconcile its prior rulings, as well as to interpret the TCPA. A ruling from the FCC (1) declaring non-telemarketing calling activity as outside the scope of the TCPA (either generally or because it does not meet the TCPA's definition of an ATDS), or (2) declaring that "capacity" under the TCPA means current capacity (not a theoretical capacity if modified), could dispose of Plaintiffs' claims before the parties and the Court invest further time and energy in deciding whether this case is suitable for class treatment. Thus, as a matter of judicial efficiency and economy, the Court ought to defer to the FCC proceedings currently under way.

---

[18] The Commissions regulations, 47 C.F.R. 64.1200(f)(1) incorporates the statutory definition verbatim.

DEFENDANT'S MOTION TO STAY
PROCEEDING - 11

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104-4089
(206) 382-2600 FAX: (206) 223-3929

[2:13-cv-01967-RSM]

### 2. Regulating Non-Telemarketing Calls, Defining "Capacity" and "ATDS" Requires Agency Expertise and National Uniformity.

In enacting the TCPA, Congress intended to "promote a uniform regulatory scheme under which telemarketers would not be subject to multiple, conflicting regulations . . . . [and] to avoid burdensome compliance costs for telemarketers." *In re Rules & Regs. Implementing the Tel. Consumer Prat. Act of 1991,* 18 FCC Red. 14014 at 14083 (2003). "[T]hrough the application of the doctrine of primary jurisdiction, the courts and the FCC should be able to prevent ... significant inconsistent application of FCC rules . . . ." *S. Cent. Bell Tel. Co. v. La. Pub. Serv. Comm 'n,* 744 F.2d 1107, 1118 (5th Cir. 1984), *vacated on other grounds,* 476 U.S. 1166 (1986).

To illustrate the importance of deferring to the FCC, courts have disagreed over what "capacity" means under the TCPA. For example, in *Gragg v. Orange Cab Company, Inc.,* ____ F.Supp.2d ___, 2014 WL 494862 (WD WA Feb. 7, 2014) the court ruled that "capacity" does not mean "potential" capacity. It is limited to what a system is able to do at the time calls are placed to the called party. *Id.* Slip Op. 2.  The court reached a like result in *Hunt v. 21st Mortgage Corp.,* 2013 WL 5230061, at Slip Op3-4 (N.D. Ala. Sept. 17, 2013), where the court ruled, "to meet the TCPA definition of an 'automatic telephone dialing system,' a system must have a *present* capacity, at the time the calls were being made, to store or produce and call numbers from a number generator." (Emphasis added.) In reaching its conclusion, the Court refused to interpret "capacity" as broadly encompassing equipment with a theoretical capacity to store or produce randomly or sequentially generated numbers because "in today's world, the possibilities of modification and alteration are virtually

DEFENDANT'S MOTION TO STAY
PROCEEDING - 12

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104-4089
(206) 382-2600 FAX: (206) 223-3929

[2:13-cv-01967-RSM]

limitless." *Id.* at 4. Such a limitless definition of capacity would mean that "roughly 20 million American iPhone users [would be] subject to the mandates of § 227(b)(l)(A)."

In contrast to *Gragg* and *Hunt*, *Nelson v. Santander Consumer USA, Inc.,* 931 F. Supp. 2d 919, 928-29 (W.D. Wis. 2013) took a far more expansive view. That court interpreted the definition of ATDS to encompass any equipment that *could* store or produce randomly or sequentially generated numbers *when paired* with the appropriate hardware or software. *Nelson's* expansive definition makes virtually every modern telephone an ATDS. To avoid its impact, we would almost have to return to the by-gone era of rotary phones.

Stellar urges this Court to adopt Judge Settle's rationale in *Hurrle v. Real Time Solutions, Inc., supra* at 3,

> Telemarketing is one activity while collecting debt from known debtors seems to be a wholly separate activity. Whether the latter activity falls within the scope of the TCPA is currently being addressed by Congress and the FCC. The issue is clearly one of policy within those bodies, and guidance on the "capacity" of autodialing systems would further clarify the law that Hurrle seeks to enforce in this action.

The court in *Hurrle* relied on this court's decision in *Barahona v. T- Mobile US, Inc.*, 628 F. Supp. 3d 1268, 1272 (W.D. Wash. 2009). In deferring to the FCC, this Court stayed a rate dispute [legality of cell provider adding late charges to delinquent accounts] involving a cellular telephone provider. In allowing the FCC to hear the dispute first, this court held,

> In view of the disparity between the cases cited by the parties, the Court finds that the interest of uniformity weighs heavily in favor of deferring to the expertise of the FCC under the primary jurisdiction doctrine. The FCC's determination….will likewise guide any decision by this Court regarding plaintiff's state law claims. Thus, use of the primary jurisdiction doctrine and

DEFENDANT'S MOTION TO STAY
PROCEEDING - 13

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104-4089
(206) 382-2600 FAX: (206) 223-3929

[2:13-cv-01967-RSM]

referral to the FCC will avoid disparate or conflicting requirements for telecommunication providers, and promote uniformity.

The principle of uniformity applies with particular force here, as the TCPA is a 'strict liability' statute, subjecting defendants to potentially staggering monetary damages that could be based on a faulty application of the law. Accord, *Alea London Ltd.* v. *Am. Home Servs., Inc.,* 638 F.3d 768, 776 (11th Cir. 2011). Finally, the Commission should be permitted to clarify its 2003 Order regarding predictive dialers. The outcome of this case turns, in large part, on the resolution of this issue as well as the broader policy issue the ACA Petition raises about the TCPA's applicability to non-sales solicitation communications.

Permitting the FCC to speak first will avoid liability findings that may later turn out to be incorrect. *See United States* v. *W. Pac. R.R. Co.,* 352 U.S. 59, 64 (1956) (allowing agency to decide issue first ensures "the limited functions of review by the judiciary are more rationally exercised"). Deferring to the Commission will conserve judicial resources and spare the parties the expense of pursuing a claim that may, ultimately, be without legal merit. Most significantly, staying this action will further the goal of applying the law consistently by allowing the FCC to issue rules of national application.

> 3. <u>Plaintiffs' Claims Require the Court to Resolve Three Issues Currently Before the FCC – Whether the TCPA Applies to Non Telemarketing Calls; Whether Stellar's System is an ATDS and Whether Plaintiff's Gave their Prior Express Consent to Being Called</u>.

To prove the TCPA claim, at a minimum, Plaintiffs must show Stellar used an ATDS to call plaintiff's cell phone or that it left a prerecorded or artificial voice message. 47

DEFENDANT'S MOTION TO STAY
PROCEEDING - 14

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104-4089
(206) 382-2600 FAX: (206) 223-3929

[2:13-cv-01967-RSM]

U.S.C. § 227(b)(l)(A)(iii). Once Plaintiffs carry their initial burden of proof, the burden shifts to Stellar to prove that if such conduct occurred, Plaintiffs gave prior express consent to such calls.

In addition to the technical questions summarized below, the FCC is wrestling with a broader policy issue; namely, whether the TCPA should even apply to the debt collection industry. In 1992, the Commission determined that debt-collection calls not directed to randomly or sequentially dialed phone numbers did not fall within the TCPA's definition of an ATDS. See *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991,* 7 FCC Rcd. 8752 39 (1992). In that ruling, the FCC also recognized Congress passed the TCPA to protect consumers from unrestricted *telemarketing* practices, not non-telemarketing calling activities.

A few years later, the FCC confirmed the TCPA did not prohibit certain non-telemarketing calls because such calls, "[were] not directed to randomly or sequentially generate telephone numbers, but instead [were] directed to the specifically programmed contact numbers." *In re Rules & Regs. Implementing the Tel. Consumer Prof. Act of 1991, 10 FCC Rcd. 12391 at 12419* (1995). Between 1995 and 2003, there was no question about whether the TCPA applied to debt collection activities. So long as the caller did not use a random or sequential number generator, such calls were outside the TCPA's scope.

In 2003, the FCC examined so-called "predictive dialers." It concluded that because this equipment could place phone calls without "human intervention," they satisfied the ATDS definition under the TCPA and Commission regulation. In *re Rules & Regs.*

DEFENDANT'S MOTION TO STAY
PROCEEDING - 15

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104-4089
(206) 382-2600 FAX: (206) 223-3929

[2:13-cv-01967-RSM]

*Implementing the Tel. Consumer Prof. Act of 1991,* 18 FCC Red. 14014 at 14133 (2003). In particular, the FCC ruled, "to be considered an 'automatic telephone dialing system,' the equipment need only have the capacity to store or produce telephone numbers." Id. The FCC reached this conclusion out of concern that technological changes had influenced telemarketers to use predictive dialers to call lists of numbers rather than to call random or sequential numbers. The FCC reaffirmed this position, without any substantive discussion or analysis, in a 2008 ruling. *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Red. 559 (2008).

The Commission's 2003 and 2008 Orders opened the door to claims against the collection industry. Because of the breadth of the Commission's Orders, it appears that the agency over turned its 1992 and 1995 Orders without saying so, thereby exposing the credit and collection industry to TCPA claims. It is unclear whether the Commission ever intended this consequence in 2003 or 2008. Defendant Stellar submits that the Court should stay this action until the FCC answers this threshold question of whether the TCPA even applies to debt collection calls not made with a random or sequential dialer or places a telephone call to a cellular phone on which the caller leaves a message that is prerecorded or uses an artificial voice.

The Commission's 2003 and 2008 Orders also left unanswered the question of whether a predictive dialer that lacked the number generator technology falls within the TCPA's definition of ATDS.

DEFENDANT'S MOTION TO STAY
PROCEEDING - 16
SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104-4089
(206) 382-2600 FAX: (206) 223-3929

[2:13-cv-01967-RSM]

Here, Plaintiff's TCPA claim that Stellar used an ATDS goes to the heart of the two technological issues the FCC is now addressing in the five pending proceedings. First, what is meant by capacity? Does it mean ability at the time the calls were made or does it encompass more? Does it extend to modifications to the system which, if made, would then have the ability to randomly and sequentially dial phone numbers? Second, the Court (and the Agency) must decide whether the FCC's 2003 decision (holding that a predictive dialer is an ATDS), dispensed with the statutory requirement that the system have a random or sequential number generator capable of randomly or sequentially dialing phone numbers.

The FCC's 2003 and 2008 Orders left unanswered the question of whether a predictive dialer that lacked a number generator was an ATDS. It never considered the ongoing requirement that a number generator was required for a predictive dialer to be deemed an ATDS. This is exactly the confusion that the ACA Rule Making Petition seeks to remedy. Accordingly, the Court should defer this determination to the Commission's rule making process.

Further, neither the TCPA nor the FCC has defined what "capacity" means-whether it includes non-telemarketing calls and calls placed from equipment that lacks the current "capacity" to store or produce randomly or sequentially generated numbers. 47 U.S.C. § 227(a)(l)(A). The anticipated FCC declaratory ruling on the Communication Innovators, YouMail and ACA petitions will resolve whether debt-related calls (i.e., non-telemarketing calls) and calls placed from a dialer that lacks a current capacity to store or produce randomly or sequentially generated numbers fall within the TCPA's prohibitions. These

DEFENDANT'S MOTION TO STAY
PROCEEDING - 17

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104-4089
(206) 382-2600 FAX: (206) 223-3929

[2:13-cv-01967-RSM]

petitions, and the GlideTalk Petition will also resolve the question of whether a dialing system (even a predictive dialing system) that lacked the capacity to randomly or sequentially dial phone numbers when calls were placed, is an ATDS.

For all of these reasons, the Court should defer to the FCC. It should apply the doctrine of primary jurisdiction and stay this proceeding until the FCC has completed its work.

### B. The Court Should Stay This Action Pursuant to the Court's Inherent Authority.

A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule does not require that the issues in such proceedings are necessarily controlling of the action before the court. *Leyva v. Certified Grocers of Cal., Ltd.,* 593 F.2d 857, 863-64 (9th Cir. 1979). Here, regardless of the primary jurisdiction doctrine, the Court should, therefore, stay this case pursuant to its inherent case management authority.

### IV. CONCLUSION

Absent a stay, Stellar will be forced to incur the burden and further expense of defending claims which may eventually be rendered moot by the FCC's actions.. Given the likelihood of FCC action in the near future, Plaintiffs cannot show they will suffer prejudice by a stay. *See Frontier Tel. of Rochester, Inc. v. USA Datanet Corp.,* 386 F. Supp. 2d 144, 151 (W.D.N.Y. 2005) (granting a stay where it appeared FCC decision "[would] be forthcoming in a matter of months").

DEFENDANT'S MOTION TO STAY
PROCEEDING - 18

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104-4089
(206) 382-2600 FAX: (206) 223-3929

[2:13-cv-01967-RSM]

1       The trial date in this case is almost two years away. The parties are only now beginning discovery. Even the time for deciding the class certification issues is six months away. By staying this proceeding at its early stage, the Court will accomplish two objectives. First, it will allow the agency with the primary responsibility for defining the bounds and limits of the TCPA to do its work. Second, it will spare the parties, and the Court, of expending resources resolving the class certification issues when those issues may be mooted by the Commission's contemplated order.

      For the foregoing reasons, Stellar asks that the Court stay this case under the primary jurisdiction doctrine or pursuant to its inherent authority until the FCC rules on the pending petitions.

      Dated this 2nd day of April 2014.

                                    SIMBURG, KETTER, SHEPPARD
                                     & PURDY, LLP

                                    By: */s/ Andrew D. Shafer*
                                    Andrew D. Shafer, WSBA No. 9405
                                    Attorney for Defendant
                                    999 Third Avenue, Suite 2525
                                    Seattle, WA 98104
                                    T: 206-382-2600
                                    F: 206.223.3929
                                    E: ashafer@sksp.com

DEFENDANT'S MOTION TO STAY
PROCEEDING - 19

SIMBURG, KETTER,
SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104-4089
(206) 382-2600 FAX: (206) 223-3929

[2:13-cv-01967-RSM]

# CERTIFICATE OF DELIVERY

I hereby certify that on the date below I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Beth E. Terrell, bterrell@tmdwlaw.com
Mary B. Reiten, mreiten@tmdwlaw.com
SaraEllen Hutchison, saraellen@saraellenhutchison.com
Thomas Jarrard, tjarrard@att.net
Robert W. Mitchell, bobmitchell@yahoo.com

And I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:
None.

DATED: April 2, 2014

SIMBURG KETTER SHEPPARD
& PURDY, LLP


*/s/ Brian D. Carpenter*
Brian D. Carpenter, Paralegal

DEFENDANT'S MOTION TO STAY PROCEEDING - 20

SIMBURG, KETTER, SHEPPARD & PURDY, LLP
999 THIRD AVENUE, SUITE 2525
SEATTLE, WASHINGTON 98104-4089
(206) 382-2600 FAX: (206) 223-3929

[2:13-cv-01967-RSM]